## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

RONALD WENING,                    :

      Plaintiff,                 :          Case No. 3:06CV300

 vs.                               :          District Judge Walter Herbert Rice
                                             Magistrate Judge Sharon L. Ovington
MICHAEL J. ASTRUE,                :
Commissioner of the Social
Security Administration,          :

      Defendant.                 :

## REPORT AND RECOMMENDATIONS[1]

### I.      INTRODUCTION

In 1988 Plaintiff Ronald Wening began suffering from multiple medical problems including herniated discs and other spinal abnormalities resulting in constant and continuing back pain, and eventually depression.  His medical problems have prevented him from performing his past work as a commercial cleaner, production helper, garbage collector, and housekeeper.  (Tr. 674).

Plaintiff has filed two applications with the Social Security Administration seeking Supplemental Security Income (SSI): the first on January 7, 1998 – with an earlier

---

[1]  Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendations.

protective filing date;[2] the second on May 30, 2002.

Plaintiff claimed in his SSI applications that beginning on December 9, 1988, his medical problems precluded him from working engaging in any significant paid employment, and as a result, he was under a "disability" within the meaning of the Social Security Act.  (Tr. 118, 663, 795).  Through two rounds of administrative proceedings the Commissioner of the Social Security Administration concluded otherwise and has consequently denied Plaintiff's SSI applications.  The Commissioner's most recent non-disability decision is subject to judicial review, *see* 42 U.S.C. §405(g), which Plaintiff is now due.

This case is before the Court upon Plaintiff's Statement of Errors (Doc. #8), the Commissioner's Memorandum in Opposition (Doc. #10), Plaintiff's Reply (Doc. #11), the administrative record, and the record as a whole.

## II.    PROCEDURAL HISTORY

After initial administrative denials of Plaintiff's first SSI application, an Administrative Law Judge (ALJ), Thomas M. McNichols II, held a hearing during which Plaintiff and a vocation expert testified.  ( Tr. 49-89).  ALJ McNichols subsequently issued a decision concluding that Plaintiff was not under a "disability" within the meaning of the Social Security Act.  (Tr. 16-30).  ALJ McNichols' non-disability decision became the Commissioner's first final decision, which  Plaintiff then challenged by filing

---

[2]  A protective filing date is the date a claimant first contacts the Social Security Administration about filing for benefits.  *See* http://www.ssa.gov (glossary).

a prior case in this Court.  *See* Tr. 722-39 (*Ronald K. Wening v. Comm'r. of Soc. Sec.*,
3:02CV166 (S.D. Ohio)(Rose, D.J.; King, M.J)).  During that prior case, Plaintiff
established the presence of certain errors in ALJ McNichols' first decision, and the Court
therefore remanded Plaintiff's case under Sentence Four of 42 U.S.C. §405(g) for further
administrative proceedings.  (Tr. 722-39).

Meanwhile, Plaintiff had filed his second SSI application, and consequently, his
second round of administrative proceedings involved his two SSI applications.  Those
proceedings included a second administrative hearing held by ALJ McNichols, during
which Plaintiff testified along with two other witnesses – a vocational expert and medical
expert Dr. Hutson.  ALJ McNichols later issued a second decision again concluding that
Plaintiff was not under a disability.  (Tr. 663-75).

Plaintiff brings the present case seeking an Order reversing ALJ McNichols'
second decision and remanding for an award of benefits or, at a minimum, an Order
remanding this case to the Social Security Administration to correct certain errors.  The
Commissioner seeks an Order affirming the ALJ's decision.

## III.    PLAINTIFF'S AGE, EDUCATION, AND IMPAIRMENTS

Plaintiff was younger than fifty years old on the date of the ALJ's second decision.
Social Security Regulations thus categorized him as a "younger person" for the purpose
of resolving his SSI applications.  *See* 20 C.F.R. §416.963(c).  Plaintiff completed school
through the eleventh grade, and thus has a "limited education" as defined by the
Regulations.  *See* 20 C.F.R. §416.964(b).

3

Plaintiff testified about his pain during both administrative hearings. He reported pain and numbness in his lower back radiating into his right leg and right arm and hand. (Tr. 57-58, 63).  He described his pain as "constant hurting" and as "very sharp":  "It feels like someone's in there at times pulling my back apart and sticking needles or something in my back and knives in my legs."  (Tr. 63).

Plaintiff uses a cane when he walks.  He testified that he could walk about half a block, if he took stopping-and-sitting breaks.  (Tr. 66).  Plaintiff estimated that he could stand for five minutes at a time before he hurt too much and had to lie down.  *Id*.  He thought he could only sit for three to fifteen minutes.  (Tr. 66, 699).  Plaintiff testified during the second administrative hearing that he could lift only "around 10 or 15 fifteen pounds" (Tr. 700), or slightly more than he estimated during the first hearing (Tr. 67).

The three children in his house perform the household chores.  (Tr. 68-69).  In a typical day, his girlfriend helps him get dressed.  (Tr. 71).  He usually spends most of his waking hours lying down.  (Tr. 75-76, 703).  He is most comfortable lying down.  (Tr. 65).

Plaintiff testified that he ruptured a disc in his back and has undergone four back surgeries.  (Tr. 690-91).  He has tried multiple modes of treatment but nothing provides lasting relief.  (Tr. 691).

When the ALJ asked Plaintiff, "Does your depression affect your ability to work?" Plaintiff answered:  "No, I guess not."  (Tr. 694).  Yet Plaintiff also acknowledged that he cries a lot, and he testified, "I hurt a lot and sometimes I want to kill myself.  I'd rather be

dead than live with all this pain that I have."  (Tr. 695).

Plaintiff stated he does not visit others but maybe once a year relatives will visit him.  (Tr. 701).  He does not have any hobbies.  He does not go to the movies or exercise, although he walks "a little bit ... to get strength in my legs.  The doctor told me it was best to move some so you don't get completely bedridden."  (Tr. 69, 701-02).  His pain causes him to be more easily upset by people than before.  (Tr. 705).  And he just cannot keep interested or focused on stuff because he's "hurting so much."  (Tr. 705).

Turning to the information in the administrative record, the parties have provided detailed and informative descriptions of Plaintiff's medical records and other pertinent evidence.  *See* Doc. #8 at 4-15; Doc. #10 at 1-10.  In light of this, and upon consideration of the complete record, there is no need to fully reiterate the parties' descriptions.  Still, identifying a few medical sources will help frame further review.

Plaintiff relies heavily on the opinions of his treating pain specialist Dr. Reddy, and his treating neurosurgeon Dr. Goodall.  (Doc. #8 at 17-22).  Both physicians assessed Plaintiff's physical work limitations to be more restricted than the full range or sedentary work.  Plaintiff points out, in part, the limitations set by Dr. Goodall:

> [Plaintiff] cannot constantly sit, stand or walk, but must freely alternate these positions.  He cannot lift in excess of 10 pounds on rare occasions.  He cannot bend, stoop, twist, kneel, or crawl.

(Tr. 443).  As to his mental work abilities, Plaintiff relies on the opinions of his treating psychiatrist Dr. Siddiqi, a consultative psychologist, Dr. Flexman, and again Dr. Reddy.  (Doc. #8 at 23-25).

5

The Commissioner relies on the opinions of medical expert Dr. Hutson, who testified during the ALJ's second hearing, and on the opinions and/or records of various non-treating medical sources.  (Doc. #10 at 11-16).

## IV.    THE "DISABILITY" REQUIREMENT
##        AND ADMINISTRATIVE REVIEW

The Social Security Administration provides SSI to indigent individuals, subject to several eligibility requirements.  Chief among these, for purposes of this case, is the "disability" requirement.  To receive SSI, an applicant must be a "disabled individual." 42 U.S.C. §1381a; *see Bowen v. City of New York*, 476 U.S. 467, 470 (1986).  The phrase "disabled individual" – as defined by the Social Security Act – has specialized meaning of limited scope.  It encompasses only those who suffer from a medically determinable physical or mental impairment severe enough to prevent them from engaging in substantial gainful activity.  42 U.S.C. §1382c(a)(3)(A); *see Bowen*, 476 U.S. at 469-70. An SSI applicant bears the ultimate burden of establishing that he or she is under a disability.  *Wyatt v. Secretary of Health and Human Services*, 974 F.2d 680, 683 (6th Cir. 1992).

Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence.  *See* Tr. 17; *see also* 20 C.F.R. §416.920(a)(4).  Although a dispositive finding at any Step terminates the ALJ's review, *see also Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential evaluation answers five questions:

1.      Is the claimant engaged in substantial gainful activity?

2.      Does the claimant suffer from one or more severe impairments?

3.      Do the claimant's severe impairments, alone or in combination, meet or
        equal the criteria of an impairment set forth in the Commissioner's Listing
        of Impairments, 20 C.F.R. Subpart P, Appendix 1?

4.      Considering the claimant's residual functional capacity, can the claimant
        perform his or her past relevant work?

5.      Considering the claimant's age, education, past work experience, and
        residual functional capacity, can the claimant perform other work available
        in the national economy?

*See* 20 C.F.R. §416.1520(a)(4); *see also Colvin*, 475 F.3d at 730; *Foster v. Halter*, 279

F.3d 348, 354 (6th Cir. 2001).

In the present case, the pertinent findings begin at Step 2 where the ALJ found,

"the medical evidence establishes that the claimant has 'severe' impairments of: 1) a

lumbosacral vertebrogenic disorder consisting of mild degenerative disc disease and a

post-laminectomy syndrome; 2) a pain disorder; 3) depression (and anxiety); and 4)

borderline intellectual functioning." (Tr. 673). At Step 3, the ALJ found no listing-level

impairment. (Tr. 673).

Continuing to the next sequential Step, the ALJ determined:

> The claimant has the residual functional capacity for a limited range
> of sedentary work subject to: 1) an opportunity to alternate sitting and
> standing at 30-minute intervals; 2) no climbing; 3) only occasional
> stooping, squatting, kneeling, or crawling; 4) no significant walking as part
> of regular job duties; 5) no work on uneven surfaces; 6) no exposure to
> hazards; 7) no driving; 8) no complex or written instructions; 9) only
> simple, low stress jobs with no production quotas; and 10) no requirement
> to maintain concentration on a single task for longer than 15 minutes at a

time.

(Tr. 674)(citing 20 C.F.R. §416.945).

The ALJ's assessment of Plaintiff's Residual Functional Capacity, along with the ALJ's findings throughout his sequential evaluation, led him to conclude that Plaintiff was not under a disability and thus not eligible to receive SSI.  (Tr. 668-75).

## V.    JUDICIAL REVIEW

Judicial review of an ALJ's decision determines whether substantial evidence in the administrative record supports the ALJ's factual findings.  *Bowen v. Comm'r. of Soc. Sec.*, 478 F3d 742, 745-46 (6th Cir. 2007).  "Substantial evidence is defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Bowen*, 478 F3d at 746 (citing in part *Richardson v. Perales*, 402 U.S. 389, 401 (1977)).  It consists of "'more than a scintilla of evidence but less than a preponderance...'"  *Rogers v. Comm'r. of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

Judicial review for substantial evidence is deferential not *de novo*.  *See Cruse v. Commissioner of Social Sec*. 502 F.3d 532, 540 (6th Cir. 2007); *see also Cutlip v. Secretary of Health and Human Servs*., 25 F.3d 284, 286 (6th Cir. 1994).  The Court's agreement or disagreement with the ALJ's findings plays no role in the substantial evidence review, and no significance attaches to contrary evidence in the record, if other substantial evidence supports the ALJ's findings.  *Rogers*, 486 F.3d at 241; *see Her v. Comm'r. of Soc. Sec*., 203 F.3d 388, 389-90 (6th Cir. 1999).

Still, reviewing for substantial supporting evidence is not the stopping point of

judicial analysis.  Courts also examine the administrative decision to determine whether the ALJ applied the correct legal criteria.  *See Bowen*, 478 F.3d at 746.  If the ALJ does not, the decision may not be upheld even when substantial evidence supports the ALJ's findings.  *See id*.  For example, a decision will not be upheld where the ALJ failed to apply the standards mandated by the Social Security Regulations and where that failure prejudices a claimant on the merits or deprives the claimant of a substantial right.  *See Bowen*, 478 F.3d at 746 (and cases cited therein).

## VI.    DISCUSSION

### A.    The Parties' Contentions

Plaintiff contends that he is more physically limited than the ALJ found as evidenced by the opinions of both treating and examining physicians.  Plaintiff asserts that the ALJ failed to evaluate the medical source opinions under the factors required by the Regulations.  Plaintiff further contends that the ALJ's reasons for rejecting the opinions of treating pain specialist Dr. Reddy are not supported by substantial evidence.

As to his mental work abilities, Plaintiff relies on the opinions of his treating psychiatrist, Dr. Siddiqi, and a consultative psychologist, Dr. Flexman.  Plaintiff argues that the ALJ erred by not crediting the opinions of these medical sources and by instead relying on the opinions of a state agency reviewing psychologist.  Plaintiff also argues that the ALJ failed to properly evaluate Dr. Reddy's opinion regarding the impact Plaintiff's combined impairments – both mental and physical – have on his ability to work.  (Doc. #8 at 22-25).

The Commissioner argues that substantial evidence supports the ALJ's assessment of Plaintiff's residual functional capacity to perform a limited range of sedentary work and that the ALJ's properly weighed the various medical source opinions of record.  The Commissioner reasons, in part, that the ALJ did not err when rejecting Dr. Reddy's opinions.  And, according to the Commissioner, the ALJ properly relied on the opinions of the medical expert, Dr. Hutson, who "opined that [Plaintiff] could perform a range of sedentary work."  (Doc. #10 at 14).  The Commissioner further argues that the ALJ's decision is supported by the opinions of three record-reviewing physicians: Dr. Cho (June 1998 opinions), Dr. Pangalangan (July 2002 opinions), and Dr. Hinzman (October 2004 opinions).  *See* Doc. #10 at 14 (and records cited therein).

The Commissioner further asserts that Dr. Goodall's opinions are "essentially accommodated by the ALJ's finding of a sit/stand option and sedentary work."  (Doc. #10 at 13)(citing Tr. 670).

Regarding Plaintiff's mental Residual Functional Capacity, the Commissioner contends that the ALJ's assessment should be affirmed because (1) he properly evaluated the opinions of Dr. Siddiqi by finding them poorly supported by the record as a whole, (2) he explained that the narrative section of Dr. Flexman's report reflected only moderate limitations, (3) he properly determined that Plaintiff's testimony was not credible, and (4) his assessment was within the substantial evidence standard's zone of choice.  (Doc. # 14-16).

10

**B.**    **Applicable Legal Criteria**

An ALJ's evaluation of the various medical source opinions begins with treating

physicians or psychologists.  Under the treating physician rule, the opinions of treating

medical sources are entitled to controlling weight as long as the opinions are (1) well

supported by medically acceptable data and (2) not inconsistent with other substantial

evidence of record.  20 C.F.R. §416.927(d)(2); *see Wilson v. Commissioner of Social*

*Security*, 378 F.3d 541, 544 (6th Cir. 2004).

If these requirements are not met, the treating physician rule does not apply.  *Id*.

In that event, the evaluation has only just begun: ALJs must continue to weigh the

treating source's opinion under additional factors, including, "the length of the treatment

relationship and the frequency of examination, the nature and extent of the treatment

relationship, supportability of the opinion, consistency of the opinion with the record as a

whole, and the specialization of the treating source – in determining what weight to give

the opinion."  *Wilson*, 378 F.3d at 544; *see Rogers v. Comm'r. of Soc. Sec.*, 486 F3d 234,

242 (6th Cir. 2007).

**C.**    **Analysis**

The ALJ did not err when describing the legal criteria applicable under the treating

physician rule.  *See* Tr. 669; *see also Wilson*, 378 F.3d at 544.  But the ALJ did not

separately describe the need for ALJs to continue weighing a treating physician's

opinions in the event the treating physician rule does not apply, and the ALJ did not

separately describe the additional factors set forth in 20 C.F.R. §404.1527(d)(2)-(6).  *See*

11

Tr. 668-73. Because of this omission, the ALJ's decision must be studied to determine whether he conducted the evaluation under the legal standards required by these Regulations – again, whether he applied the correct legal criteria.

Beginning with Dr. Reddy, he found Plaintiff's work abilities limited as follows:

• he could not lift more than ten pounds occasionally or five pounds frequently;

• he could stand and walk for one hour (without interruptions), and for a total of two to three hours during an eight-hour workday;

• he could sit on a single occasion for one hour (without interruptions), and for a total of two to three hours during an eight-hour workday;

• he should never climb, and could occasionally stoop, crouch, kneel, or crawl; and

• he did have the ability to perform sedentary work during an eight hour workday.

(Tr. 996-1000). Dr. Reddy repeatedly indicated that he based his opinions on Plaintiff's history, his physical examination, and the results of MRI and CT testing. *See id*.

Dr. Reddy also answered written interrogatories, beginning with the following list of his professional qualifications: Board Certified by the American Board of Pain Medicine; Board Certified, American Academy of Pain Medicine; Board Certified, American Board of Anesthesia with special certifications in Pain Medicine; Diplomat, American Board of Hospice and Palliative Care; and Board Certified in Critical Care. (Tr. 986). Dr. Reddy noted that he had treated Plaintiff for the following medical problems: degenerative disc disease, cervical; degenerative disc disease, L4-L5 and L5-S1; right cervical radiculopathy; history of tension headaches; post laminectomy syndrome ("failed back"); bilateral lumbar radiculopathy; facet arthropathy; and

12

personality disorder (DSM-IV, axis II).  (Tr. 987).  According to Dr. Reddy, the

combination of these physical and mental health problems precluded Plaintiff from

performing the mental demands of work.  *See* Tr. 936-995; *see also* Tr. 666.

The ALJ rejected Dr. Reddy's opinion by finding "it is poorly-supported by the

objective medical findings and treatment history."  (Tr. 671).  Through this statement, the

ALJ applied one of necessary components of the treating physician rule, considering

whether Dr. Reddy's opinion was "well-supported well supported by medically

acceptable data," *see supra*, §VI(B).  But, nothing in the ALJ's evaluation of Dr. Reddy's

opinion indicates that the ALJ continued to weigh Dr. Reddy's opinion under the

remaining factors set forth in the Regulations.  *See* Tr. 671.  Without such continued-

weighing, the ALJ did not apply the mandatory evaluation procedure and legal criteria

required by the Regulations.  *See Rogers*, 486 F.3d at 242.  Belaboring the point helps

drive home its significance under the Regulations and case law:

> When the treating physician's opinion is not controlling, the ALJ, in
> determining how much weight is appropriate, must consider a host of
> factors, including the length, frequency, nature, and extent of the treatment
> relationship; the supportability and consistency of the physician's
> conclusions; the specialization of the physician; and any other relevant
> factors....  However, in all cases there remains a presumption, albeit a
> rebuttable one, that the opinion of a treating physician is entitled to great
> deference, its non-controlling status notwithstanding....

*Rogers*, 486 F.3d at 242 (citation omitted).  The Commissioner's Rulings likewise explain

the mandatory nature of the continued-weighing requirement, emphasizing:

> Adjudicators must remember that a finding that a treating source's
> medical opinion is not well-supported by medically acceptable clinical and

13

laboratory techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected. <u>Treating source opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. 404.1527 and 416.927.</u> In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

Social Security Ruling 96-2p, 1996 WL 374188 at *4 (July 2, 1996)(emphasis added).

Searching the ALJ's entire decision for any further evaluation or weighing of Dr. Reddy's opinion does not reveal any mention of the regulatory factors. Although the ALJ elsewhere discussed Dr. Reddy's opinions, that discussion was descriptive not evaluative. *See* Tr. 666. And, the ALJ's decision contains no indication that he applied the mandatory continued-weighing procedure or that he considered the remaining factors set forth in 20 C.F.R. §416.927(d)(2)-(6) as to treating specialist Dr. Reddy's opinions.

The only other comment in the ALJ's brief evaluation of Dr. Reddy's opinion was the ALJ's following observation: "Actually, a form completed at the pain clinic indicated that treatment had been moderately effective and that the claimant was improved somewhat – only a temporary, not permanent disability was suggested by this form (Ex. B24F, p. 16)." (Tr. 671). Reviewing this one-page form (Tr. 1166), it provides only limited information by way of checkmarks. The form, moreover, did not ask for information about Plaintiff's work abilities or his disability status; it was instead a progress report on treatment objectives relative to the continued use of prescription narcotics. *See* Tr. 1166. In addition, a cursory handwritten note on the form itself indicates that Plaintiff is "disabled, walks [with] a cane." (Tr. 1166). This form is simply

14

not what the ALJ thought, a record that conflicts with Dr. Reddy's more specific opinions about Plaintiff's functional work abilities and limitations.  This form is merely an isolated record of moderate improvement on a particular date with no indication of whether the moderate improvement continued or whether it had any positive, lasting effect on Plaintiff's physical impairments.  The limited information provided on this one-page document does not constitute substantial evidence in support of the ALJ's rejecting of Dr. Reddy's opinions.  *Cf. Rajt v. Secretary of Health and Human Services*, 859 F.Supp. 275, 282 (E.D. Mich. 1994).[3]

Lastly with regard to Dr. Reddy, the ALJ's application of one necessary element of the treating physician rule, without continuing his evaluation as required by the Regulations, Rulings, and case law, deprived the ALJ's decision of a good explanation for rejecting Dr. Reddy's opinions.  Without this type of good explanation, the ALJ failed to comply with another mandatory procedural requirement dictated by the Regulations, specifically 20 C.F.R. §416.927(d)(2), which states, "We will always give good reasons in our notice of determination of decision for the weight we give [the claimant's] treating source's opinion."  *See Wilson*, 378 F.3d at 544.  This omission constitutes further error in the ALJ's rejection of treating specialist Dr. Reddy's opinion.  *See id.*

Turning to the other medical sources of record, the ALJ credited the opinions of

_____

[3]  The issue is not, as the ALJ's reliance on this document suggests, whether Plaintiff's back condition improved on one day or for a limited period.  The issue instead is whether or not the Plaintiff's condition has improved to the point that he can perform work activity.  *See generally,* 20 C.F.R. §416.994(b).

certain non-treating medical sources without evaluating those opinions under any of the applicable regulatory factors. *See* Tr. 670-71. By not doing so, the ALJ failed to comply with the requirement – set by the Regulations – directing the ALJ to evaluate those opinions "using relevant factors" including supportability, consistency, and specialization described in 20 C.F.R. §416.927(d). The Commissioner's Ruling explains, "the rules for considering ... treating sources ... also apply when we consider the opinions of nonexamining sources, including State agency medical ... consultants and other program physicians and psychologists." Social Security Ruling 96-6p, 1996 WL 374180 at *2. The plain language of the Regulations emphasizes the mandatory nature of the Ruling 96-6p's directive by reiterating it no less than three times. *See* 20 C.F.R. §416.927(d) ("we consider all of the following factors in deciding the weight to give any medical opinion...."); 20 C.F.R. §416.927(f)(ii) (factors apply to opinions of state agency consultants); 20 C.F.R. §416.927(f)(iii) (same as to medical experts' opinions).

There remains the possibility that the ALJ's errors were harmless, *see Bowen*, 478 F.3d at 747-49, an issue neither party specifically addresses. The Commissioner, finding no error in the ALJ's decision, argues that the ALJ properly evaluated the medical source opinions, and properly relied on substantial evidence when assessing Plaintiff's Residual Functional Capacity. The substantial evidence, according to the Commissioner, consisted of opinions provided by the non-treating medical sources including, Drs. Cho, Ray, Pangalangan, Hinzman, and Dr. Hutson. (Doc. #10 at 11-16).

The harmless-error issue is whether the ALJ's decision, the evidence of record, or

16

the Commissioner's arguments provide a sufficient basis for overlooking the ALJ's errors.  *See Bowen*, 478 F.3d at 747-48; *Wilson*, 378 F.3d at 546-47.

The ALJ's errors when evaluating Dr. Reddy's opinions were not harmless because the information Dr. Reddy provided in his reports, his references to Plaintiff's treatment history and to objective evidence, both of which reveal ongoing and serious back abnormalities.  *See* Tr. 986-1000; *see also* Doc. #8 at 17-22 (and record citations therein).  The record contains evidence indicating that Plaintiff has back (lumbar) pain and leg pain that has defied virtually all treatment.  He has suffered disc herniation and has twice undergone diskectomies at L5-S1.  (Tr. 297-98, 319-20).  Given the large amount and quality of evidence, including Dr. Reddy's opinions, that support the existence of Plaintiff's significant back abnormalities, the ALJ's errors were not harmless.  *See Bowen*, 478 F.3d at 747-48; *Wilson*, 378 F.3d at 546-47.

To the extent medical expert Dr. Hutson's testimony differed from the opinions of Dr. Reddy, this does not reveal harmless error, because the ALJ did not apply the correct legal criteria to Dr. Hutson's opinions.  *See* Tr. 670-72.  This same reasoning applies to the reports of the other non-treating medical sources, whose opinions therefore also fail to constitute harmless error.

Finally, to the extent that the Commissioner applied a *post-hoc* evaluation of the medical sources' opinions, *i.e.*, one that is missing from the ALJ's decision, it is highly doubtful that this can be the sole basis to affirm an ALJ's decision when the ALJ has failed to weigh both the treating and non-treating medical source opinions as required by

17

the Regulations.  "A court cannot excuse the denial of a mandatory procedural

requirement protection simply because, as the Commissioner urges, there is sufficient

evidence in the record for the ALJ to discount the treating source's opinion and, thus, a

different outcome on remand is unlikely.  '[A] procedural error is not made harmless

simply because the [aggrieved party] appears to have had little chance of success on the

merits anyway.'  To hold otherwise, and to recognize substantial evidence as a defense to

non-compliance with §1527(d)(2), would afford the Commissioner the ability to violate

the regulation with impunity and render the protections promised therein illusory.  The

general administrative law rule, after all, is for a reviewing court, in addition to whatever

substantive factual or legal review is appropriate, to 'set aside agency action ... found to

be ... without observance of procedure required by law.'"  *Wilson*, 378 F.3d at 546

(internal citations omitted).

 Accordingly, Plaintiff's challenges to the ALJ's evaluation of the medical source

opinions are well taken.[4]

## VII. REVERSAL, REMAND, AND AWARD OF SSI

 If the ALJ failed to apply the correct legal standards or his factual conclusions are

not supported by substantial evidence, the Court must decide whether to remand the case

for rehearing or to reverse and order an award of benefits.  Under sentence four of  42

---

 [4]  In light of the above review, and the resulting need to remand for payment of benefits, *see infra*, §VII, an in-depth analysis of the parties' contentions about Plaintiff's mental work limitations is unwarranted.

U.S.C. §405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991).  Remand is appropriate if the Commissioner applied an erroneous principle of law, failed to consider certain evidence, failed to consider the combined effect of impairments, or failed to make a credibility finding. *Faucher v. Secretary of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994).

An Order remanding for payment of SSI is only warranted "where proof of the disability is overwhelming or where the proof of disability is strong and evidence to the contrary is lacking." *Faucher*, 17 F.3d at 176.

In the present case, the evidence in support of Plaintiff's disability status is either overwhelming or at least strong while contrary evidence is lacking.  There is no question that Plaintiff's back impairments are objectively documented throughout the record. Plaintiff underwent two unsuccessful diskectomies (and perhaps two other unsuccessful back surgeries); objective tests reveal the presence of long-term back problems – as the ALJ appeared to recognize by recognizing Plaintiff's post-laminectomy syndrome. *See* Tr. 673.  The record further documents Plaintiff's reports to treating medical sources of his long-term severe pain.  The record further documents that Plaintiff has received little, if any, improvement, in his back pain despite treatment in multiple modalities – physical therapy, prescription narcotic pain medications; multiple injections in multiple sites. *See generally*, 378-83, 389, 417-20, 489, 497, 505, 867-97, 1027-1084, 1151-1166.

Perhaps most significantly, medical expert Dr. Hutson testified as follows during

19

the ALJ's second hearing:

> Q.    Does it appear that the Claimant has a medical impairment that could reasonably cause the type of pain to which we've heard him testify and what seems to be treated in the record?
>
> [Dr. Hutson]  Yes.

(Tr. 713).  Dr. Hutson also acknowledged that Plaintiff's records indicated that he had received Morphine blocks, and epidural blocks, and that he was being treated as if he has ongoing severe pain.  (Tr. 712).  Dr. Hutson further testified as follows:

> Q.    I'm looking in the records of ... Dr. Rogers..., there's a report of Dr. Rogers... on a form from the Bureau of Disability Determinations, which he describes what's called intractable back, intractable pain requiring narcotics daily.  When a doctor makes that kind of statement after several back surgeries, what does that suggest with regard to the patient's ongoing symptomatology?
>
> [Dr. H.]      That the pain is very severe.
>
> Q.    When one has had multiple back surgeries and continues to have severe pain, does there come a point in time where the doctors would generally say, I don't think we should do more surgery, that this is just a situation one has to live with?
>
> [Dr. H]      Yes.
>
> Q.    Again, does that seem to be the situation here?
>
> [Dr. H]      Yes.

(Tr. 711).  Dr. Hutson did feel constrained to address whether the pain level Plaintiff described was disabling.  Dr. Hutson explained, "Since there is no test for pain that's difficult for me to answer objectively."  (Tr. 712).  This does little to support the ALJ's decision because of Dr. Hutson's other testimony, just discussed, and because Social

Security Regulations did not require Plaintiff to produce objective medical evidence of pain itself.  *See* 20 C.F.R. §416.929; *see also Felisky v. Bowen*, 35 F.3d 1027, 1038-39 (6th Cir. 1994).

Dr. Hutson, moreover, did not point to evidence in the record indicating that treating physicians have doubted Plaintiff's reports of severe pain.  The records instead indicate that his treating sources – including treating specialist Dr. Reddy – have accepted Plaintiff's reports of severe pain and have continued to search for an efficacious treatment.  The treating medical sources have not questioned the validity of Plaintiff's reported pain levels or indicated any exaggeration or fabrication by him.  In a similar situation, the United States Court of Appeals has explained:

> Surely if they [treating physicians] had any doubts about Felisky's credibility, some mention of it would appear in the medical record. In ruling out possibilities, the examining physicians must have ruled out the possibility that Felisky is a hypochondriac or that she is exaggerating her symptoms. In Dr. Castor's words, an 'astounding collection' of tests and examinations have been performed on Felisky, and several physicians have invested great amounts of effort in attempting to identify her problems. We cannot believe that this effort would continue if they did not believe that Felisky was accurately describing her symptoms.

*Felisky*, 35 F.3d at 1040.  Even if Plaintiff's records are not viewed as an "astounding collection" of tests and examinations, his records consistently document an objective medical basis for his long-term severe pain and further confirm that treating physicians have invested great time and effort to attempt to reduce or relieve his pain without much success.   In this evidentiary situation, there is little room to characterize the non-treating medical source opinions as anything more than weak evidence when compared to the

records and opinions of Plaintiff's treating medical sources, including pain specialist Dr. Reddy, particularly when Dr. Hutson's testimony essentially confirmed Plaintiff's descriptions of his pain levels.  In light of this, the opinions provided by the non-treating medical sources are too slender a reed upon which to base a remand for further administrative proceedings.

For all these reasons, the record contains either overwhelming evidence in support of Plaintiff's disability, or strong supporting evidence while contrary evidence of record is lacking.  Having thus establish that he meets the statutory "disability" for SSI eligibility, Plaintiff is entitled to receive SSI.  *See Felisky*, 35 F.3d at 1040-41.

Accordingly, the ALJ's non-disability finding should be reversed and this matter should be remanded to the Commissioner for an award of SSI consistent with this Report and Recommendation, the Social Security Act, and the Commissioner's Regulations.

### IT IS THEREFORE RECOMMENDED THAT:

1.    The Commissioner's final non-disability decision be REVERSED;

2.    This case be REMANDED to the Commissioner under Sentence Four of 42 U.S.C. §405(g) for payment of SSI benefits to Ronald Wening based on his SSI applications at issue in this case; and

3     The case be terminated on the docket of this Court.


March 14, 2008                          _____s/Sharon L. Ovington_____
                                        Sharon L. Ovington
                                        United States Magistrate Judge


22

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(e), this period is extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by mail.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within ten days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See United States v. Walters*, 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).